# THE STATE OF SOUTH CAROLINA
## In The Supreme Court

In the Matter of John Keith Blincow, Jr., Respondent.

Appellate Case No. 2024-001081

Opinion No. 28262
Submitted January 29, 2025 – Filed February 19, 2025

## DISBARRED

Disciplinary Counsel William M. Blitch, Jr., and Assistant Disciplinary Counsel Connor J. Parker, both of Columbia, for the Office of Disciplinary Counsel

Barbara Marie Seymour, of Clawson & Staubes, LLC, of Columbia for Respondent.

**PER CURIAM:**   In this attorney disciplinary matter, Respondent and the Office of Disciplinary Counsel (ODC) have entered into an Agreement for Discipline by Consent (Agreement) pursuant to Rule 21 of the Rules for Lawyer Disciplinary Enforcement (RLDE) contained in Rule 413 of the South Carolina Appellate Court Rules (SCACR).  In the Agreement, Respondent admits misconduct, agrees to pay costs, and consents to the imposition of a definite suspension of up to three years or disbarment.  Based on the severity of Respondent's misconduct, we disbar Respondent from the practice of law in this state.  The facts, as set forth in the Agreement, are as follows.

## I.

## Matter A.

In December 2020, Client A signed a written engagement agreement with

Respondent to pursue civil causes of action on her behalf.[1] The terms of the agreement were that Respondent would be compensated on a "hybrid" contingency fee basis. Specifically, Respondent was supposed to charge an hourly rate against a legal fee retainer of $50,000, and if Respondent's services exceed the value of the retainer, Respondent would be paid a contingency fee. The fee agreement further required that a case expense retainer of $25,000 be held in trust and used for payment of expert witness fees and other case expenses. The fee agreement established that when Client A's case ended, she could require Respondent to refund any and all money left in the retainers. Client A paid Respondent the $50,000 fee retainer and the $25,000 expense retainer in December 2020.

Both the legal fee retainer and the case expense retainer should have been held in trust. Although Respondent properly deposited the $25,000 case expense retainer into his trust account, Respondent deposited the $50,000 legal fee retainer directly into his operating account.[2]

In March 2021, Respondent filed an action in state court on behalf of Client A. The was subsequently removed to federal court and did not survive a preliminary motion to dismiss in June 2021. Client A immediately requested a refund of the unused portions of the two retainers.

Respondent admits he did not create or maintain trust account reconciliation reports or generate periodic billing statements as a general practice. After much delay on Respondent's part, Respondent provided Client A with a disbursement sheet in August 2021 representing an accounting of Client A's expense retainer, showing payments of a filing fee and expert witness invoice dated March 2021 and July 2021, respectively. In fact, however, Respondent had not paid the expert witness despite his representation on the disbursement sheet. Along with the accounting, Respondent wrote a check from his trust account to Client A for the refund of the unused portion of the expense retainer. Because the balance in the trust account was insufficient to cover the refund Client A was owed, Respondent

---

[1] Respondent was to prepare and file a complaint in South Carolina within a specific timeframe as part of a legal strategy in complex business litigation pending in Texas. At the time Respondent was retained, Client A already had counsel involved who participated in the South Carolina litigation as co-counsel with Respondent.

[2] The written fee agreement did not provide that Respondent would treat the fee as immediately earned.

transferred personal funds into his trust account.

As to the unused balance of the fee retainer, Respondent told Client A he needed time to generate a bill to determine how much of a refund Client A was owed. Client A recorded a phone call between herself and Respondent, in which Respondent admitted to spending Client A's retainers on living expenses, rather than paying co-counsel or the expert witness. Among other personal and business uses, Respondent used Client A's retainers to pay for college tuition, loan payments, a ski trip, and country club membership.

In October 2021, Respondent finalized a bill for his services rendered through June 2021 and issued a check from his operating account to refund Client A the unused portion of her fee retainer. At the time the check was issued, the balance of the operating account was insufficient to cover amount of the refund check. Respondent transferred personal funds into his operating account a week later to cover the refund.

In connection with Client A's matter, Respondent admits that he was arrested and charged with a felony count of breach of trust with fraudulent intent in December 2021. Respondent timely self-reported his misconduct to the Office of Disciplinary Counsel and was placed on interim suspension on December 21, 2021. *In re Blincow*, 436 S.C. 201, 871 S.E.2d 883 (2021). Respondent ultimately pled guilty to misdemeanor forgery in April 2023.

During its investigation, ODC also discovered various other instances in which Respondent made improper withdrawals and deposits, disbursed before collection, and comingled funds. On July 26, 2019, Respondent deposited a settlement check on behalf of a client in the amount of $425,000. That same day, Respondent wrote a check to himself for a portion of his fees in the amount of $10,000, relying on the bank's provisional credit to the account to disburse before the check was collected. Over two months after deposit, Respondent paid co-counsel's share of fees, and from the time of deposit until November 30, 2020, Respondent withdrew or wrote checks to himself for his fees in piecemeal fashion.

In August 2020, Respondent deposited $10,000 of personal funds in his trust account. ODC further discovered the deposit was made to replenish funds deposited by his law partner on behalf of the partner's client. Respondent represents that his partner communicated to him that the partner had deposited $10,000 into the trust account to be held in escrow for one of his clients and that he now needed to disburse in that matter, but the balance in the account was not

sufficient to cover the disbursement.  Respondent assumed he had miscalculated a fee and withdrew too much money at some point, so he deposited $10,000 of his own money to restore the funds.

Lastly, on October 21, 2020, Respondent deposited a settlement check on behalf of a client in the amount of $182,500; he also he transferred to himself a portion of his fees in the amount of $15,000. The next day, October 22, 2020, Respondent transferred to himself a portion of his fees in the amount of $10,000.  That same day, Respondent also disbursed to the client settlement proceeds in the amount of $109,500, relying on the bank's provision credit to the account to disburse before the check was collected.  Furthermore, between February 17, 2021, and May 21, 2021, Respondent made four withdrawals of $10,000 each for earned fees in the matter.  In total, Respondent withdrew $2,000 more than his expenses and earned fees.

## Matter B.

Prior to being placed on interim suspension on December 21, 2021, Respondent represented Client B in a federal multi-district case against Bayer regarding Roundup weed killer.  Respondent admits that he did not timely move to withdraw from representing Client B before the United States District Court as required by Rule 30(c), RLDE, Rule 413, SCACR.

## II.

In the Agreement, Respondent admits that his conduct as set forth above violated the following provision of the Rules of Professional Conduct, Rule 407, SCACR: Rule 1.15(a) (requiring a lawyer to appropriately safeguard client funds); Rule 1.15(c) (requiring a lawyer to deposit unearned fees in trust and allowing withdrawal only as fees are earned); Rule 1.15(d) (requiring that a lawyer promptly deliver to the client any funds or other property that the client is entitled to receive and, upon request by the client, a lawyer shall promptly render a full accounting regarding such property); Rule 1.15(f) (prohibiting a lawyer from disbursing funds from a trust account unless the funds to be disbursed have been deposited in the account and are collected funds);  Rule 1.16(d) (requiring a lawyer, upon termination of representation, to surrender papers and property to which the client is entitled and refund any unearned fee or expense); Rule 8.4(d) (prohibiting conduct involving dishonesty, fraud, deceit, or misrepresentation); and Rule 8.4(e) (prohibiting conduct that is prejudicial to the administration of justice). Additionally, Respondent admits that his conduct violated Rule 30, RLDE, Rule

413, SCACR (listing the duties of a lawyer upon suspension, including that a lawyer must move in the court in which proceedings are pending for leave to withdraw as counsel). Additionally, Respondent admits that he did not prepare or maintain monthly trust account reconciliation reports, client ledgers, trial balance reports, or adequate receipts of deposit, as required by Rule 1.15, RPC, Rule 407, SCACR, and Rule 417, SCACR.

We find Respondent's financial misconduct constitutes grounds for discipline under the following Rules for Lawyer Disciplinary Enforcement, Rule 413, SCACR: Rule 7(a)91) (providing a violation of the Rules of Professional Conduct is a ground for discipline); and Rule 7(a)(5) (providing conduct bringing the legal profession into disrepute or conduct demonstrating an unfitness to practice law is a ground for discipline). We further find Respondent's forgery conviction constitutes a ground for discipline under Rule 7(a)(4), RLDE, Rule 413, SCACR (providing that being convicted of a crime of moral turpitude is a ground for discipline). *See State v. Johnson*, 271 S.C. 485, 487, 248 S.E.2d 313, 314 (1978) (identifying forgery as a crime of moral turpitude ).

In the Agreement, Respondent admits his wrongdoing, agrees to pay costs, and agrees to the imposition of a definite suspension of up to three years or disbarment as a sanction for his misconduct. Respondent requests that his sanction be imposed retroactively to the date of his interim suspension. Attached to the Agreement is an affidavit in mitigation in which Respondent explains that he contacted the client in Matter B and notified both opposing counsel and the relevant federal clerk of court of his suspension; however, he failed to file a formal motion to withdraw with the presiding judge because he "mistakenly assumed [he] would be notified if a formal motion was required."

As to his financial misconduct, Respondent explains that after his arrest and the related media coverage, his personal and professional life "came crashing down." Respondent explains that the resulting shame and humiliation caused him to examine his life and determine three things: (1) that his family had been living beyond its means for years and was in poor shape financially; (2) that he had become prideful and lazy and was not working as hard as he should have been at his law practice; and (3) that he had a years-long problem with alcohol and was an alcoholic, which led to "delusional thinking" that somehow everything would work out even though Respondent had no plan to repair his family's finances. Respondent states that in August 2022, he and his wife sold the family home, which allowed them to pay off all their debt, including what he had borrowed to fund his children's education. Respondent and his wife now live modestly with

manageable expenses. Respondent also explains that he is proactively managing his alcoholism, attends AA meetings every morning, and intends to live an alcohol-free life. Respondent describes this experience as transformative and asks the Court to impose a definite suspension, rather than disbarment, to allow him the opportunity to seek reinstatement and eventually continue his thirty-seven-year career practicing law. In requesting a definite suspension, Respondent emphasizes: (1) his lack of prior discipline; (2) his self-report and cooperation with ODC; (3) his acknowledgement of his mistakes and genuine expression of remorse; (4) he actively sought help to address his alcohol addiction; (5) his restitution to the client, including refunding earned fees to Client A.

Also included with Respondent's affidavit in mitigation are character letters from five distinguished members of the Bar, all of whom vouch for Respondent's overall character and ability to continue to positively contribute to the community if he is allowed to continue practicing law.

## III.

"This Court has never regarded financial misconduct lightly, particularly when such misconduct concerns expenditure of client funds or other improper use of trust funds." *In re Webb*, 444 S.C. 216, 223, 906 S.E.2d 584, 588 (2024) (quoting *In re Wern*, 431 S.C. 643, 649, 849 S.E.2d 898, 901 (2020)). We commend Respondent for the steps he has taken to overcome his addiction and take responsibility for his mistakes. However, in light of Respondent's admitted misappropriation of client funds, which is extremely serious misconduct, we find disbarment is the appropriate sanction. *See Webb*, 444 S.C. at 223, 906 S.E.2d at 588 (finding disbarment was appropriate for misappropriation of client funds); *In re Gundling*, 442 S.C. 429, 437, 900 S.E.2d 419, 423 (2024) (finding disbarment was appropriate for misappropriation of client funds); *In re Lynn*, 439 S.C. 118, 126, 886 S.E.2d 215, 219–20 (2023) (finding disbarment was appropriate for misappropriation of client funds and neglect of client matters). Accordingly, we accept the Agreement and disbar Respondent from the practice of law in this state.[3]

Within thirty days, Respondent shall pay the costs incurred in the investigation and prosecution of this matter by ODC and the Commission. Within fifteen days of the date of this opinion, Respondent shall surrender his Certificate of Admission to the

---

[3] We decline to impose disbarment retroactively.

Practice of Law to the Clerk of this Court.[4]

**DISBARRED.**

**KITTREDGE, C.J., FEW, JAMES and VERDIN, JJ., concur. HILL, J., not participating.**

---

[4] Pursuant to the terms of the Agreement, should Respondent seek readmission in the future, he may not submit a petition for readmission unless he first completes the Legal Ethics and Practice Program Trust Account School. Should this Court determine in the future that Respondent is qualified to be readmitted, Respondent agrees that for two years following readmission, he shall provide the Commission on Lawyer Conduct with quarterly reconciliations of his trust account.